[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13847
Non-Argument Calendar

_____

D.C. Docket No. 6:12-cr-00320-JA-GJK-1


UNITED STATES OF AMERICA,

                                                        Plaintiff-Appellee,

versus

CHRISTOPHER CASTILLO,

                                                        Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 2, 2014)

Before TJOFLAT, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Christopher Castillo appeals the district court's denial of his Federal Rule of

Criminal Procedure 29 motion for a judgment of acquittal, after a jury found him

guilty of making a threat to injure or kill the President of the United States, in violation of 18 U.S.C. § 871(a). In response to a picture posted on Facebook, Castillo commented, ""[T]hat's the last straw. If he gets re-elected, I'm going to hunt him down and kill him and watch the life disappear from his eyes." When another Facebook poster informed Castillo that threatening the President was a federal offense and that the Secret Service tracked down people who posted threats on social media, Castillo responded, "I wouldn't call it a threat but more of a promise. Let them come after me. Be more than happy to take a few of them with me." On appeal, Castillo argues that the district court erred by denying his Rule 29 motion because: (1) his statement was constitutionally protected political hyperbole, not a true threat, and (2) the government had presented only selected portions of the Facebook conversation that stemmed from the initial post, not the entire conversation, and had not met its burden to prove that his statement, when considered in context, was a true threat. After careful review, we affirm.

We review de novo the district court's denial of a Rule 29 motion for a judgment of acquittal. United States v. Hunt, 526 F.3d 739, 744 (11th Cir. 2008). However, if the party did not raise the same argument before the district court, we review the issue for plain error -- which requires (1) error; (2) that was plain; and (3) affected substantial rights; and if those three prongs are met, we may exercise our discretion to correct the error if (4) it seriously affects the fairness, integrity or

public reputation of judicial proceedings. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). Generally, there can be no plain error if neither the Supreme Court nor we have addressed the issue, unless a statute expressly resolves the issue. United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003).

The government has the burden to prove all essential elements of a charged offense beyond a reasonable doubt. United States v. Medina, 485 F.3d 1291, 1300 (11th Cir. 2007). In reviewing the denial of a Rule 29 motion, we view the evidence in the light most favorable to the government and draw all reasonable inferences in favor of the jury's verdict. Hunt, 526 F.3d at 744. The evidence is sufficient to sustain a conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 745 (quotation omitted). This standard does not require the evidence to be "inconsistent with every reasonable hypothesis other than guilt." Id. We permit the jury to choose from several reasonable conclusions that could be drawn from the evidence. Id.

The U.S. Code prohibits anyone from knowingly and willfully threatening to take the life of or to inflict bodily harm upon the President of the United States. 18 U.S.C. § 871(a). To sustain a conviction under § 871(a), the government must prove that (1) the defendant knowingly and willfully uttered the words alleged to constitute the threat, (2) the defendant understood the meaning of the words to be an apparent threat, and (3) the defendant said or wrote the words. See United

3

States v. Callahan, 702 F.2d 964, 965 (11th Cir. 1983) (involving threats mailed to the President).  In Callahan, we expressly rejected the argument that the statute required the defendant to subjectively intend to injure the President or to incite others to injure the President.  Id. at 965-66.  Instead, the government must only prove that the defendant made the statement under such circumstances that a reasonable person would construe the statement as a serious expression of an intention to kill the President.  Id. at 965.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  Although the First Amendment generally prevents the government from regulating speech, the Supreme Court has confirmed that the government is permitted to regulate some types of speech, including true threats.  United States v. Alvarez, 132 S.Ct. 2537, 2544 (2012).  A true threat is a statement in which "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals."  Virginia v. Black, 538 U.S. 343, 359 (2003).  The speaker need not intend to carry out the threat, id. at 359-60, and a true threat does not require that the speaker intend to communicate a threat, United States v. Martinez, 736 F.3d 981, 983, 987-88 (11th Cir. 2013) (involving a conviction under 18 U.S.C. § 875(c)).

4

However, the Supreme Court has distinguished between true threats and political hyperbole, which the government cannot regulate. Watts v. United States, 394 U.S. 705, 706-08 (1969). In Watts, the defendant attended a public rally and joined a gathering of other young people to discuss police brutality. Id. at 705-06. When another participant suggested that the young people should get more education before espousing their views, the defendant responded,

> They always holler at us to get an education. And now I have already received my draft classification as 1-A and I have got to report for my physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J. They are not going to make me kill my black brothers.

Id. at 706 (quotation omitted). Emphasizing the context of the statement, the expressly conditional nature of the statement, and the reaction of the listeners, who had laughed in response, the Court concluded that the comment was "a kind of very crude offensive method of stating a political opposition to the President." Id. at 708 (quotation omitted). There, the Supreme Court emphasized that debate on public issues "may well include vehement, caustic, and sometimes unpleasantly sharp attacks" on politicians. Id. at 708 (quotation omitted). Therefore, the Court ordered that a judgment of acquittal be entered. Id.

In United States v. Alaboud, 347 F.3d 1293, 1296-97 (11th Cir. 2003), we concluded that there was sufficient evidence to sustain the defendant's conviction for violating § 875(c), and, in doing so, expressly stated that it was required to look

5

at the context in which the communication was made to determine if the communication would cause a reasonable person to construe it as a serious intention to inflict bodily harm.  In looking at the relevant context, we specifically referred to, inter alia, the graphic promises of violence made in the phone calls at issue, the tone of the defendant's voice when he conveyed the threats, and the number of phone calls made to the victim.  Id. at 1297.  Moreover, in Callahan, we emphasized that reasonable persons could construe the threat in question as a serious expression of an intent to kill because (1) the letter in question was threatening on its face; (2) the letter included a date, time, and place on which the assassinations would occur, and the defendant had expressed his willingness to accept responsibility for them; (3) when he was arrested, the defendant emphasized that he meant everything that he had said; and (4) although the carrying out of the threat was conditional, the threat itself was not.  702 F.2d at 966.

Relevant direct evidence of a charge in the indictment is always admissible unless the evidence falls under a rule of exclusion.  United States v. Troya, 733 F.3d 1125, 1131 (11th Cir. 2013).  Relevant evidence tends to make a fact more or less probable than it would be without the evidence.  Fed.R.Evid. 401.  Intrinsic evidence is admissible if it is (1) an uncharged offense that arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with evidence

6

related to the charged offense. Troya, 733 F.3d at 1131. If the evidence is an integral and natural part of a witness' account of the charged offense, it is inextricably intertwined. Id.

To begin with, we review for plain error Castillo's claim -- raised for the first time in this Court -- that his second post could not be considered because it was not included in the indictment. As the record shows, the district court did not plainly err by admitting evidence related to Castillo's second post because that post was necessary to complete the story of the crime, given that (1) the post emphasized that what Castillo had said in the first post was true, (2) another Facebook poster, Vaughan Alexander, did not feel it necessary to contact the Secret Service about Castillo's post until seeing the second post, and (3) it was part of the same conversation that stemmed from the initial Facebook post. See id. The second post was inextricably intertwined with the first post for the same reasons. See id. Castillo's claim of plain error also fails because he has not identified any caselaw forbidding a court from considering relevant and admissible evidence simply because it was not charged in the indictment.

We also conclude that the district court did not err by denying the Rule 29 motion because there was sufficient evidence that Castillo's Facebook threat constituted a true threat, not political hyperbole. Specifically, (1) Castillo's initial post had no indication that he did not intend the threat as he wrote it; (2) when

confronted with the illegality of his actions, Castillo responded that his initial comment was not a threat, but a promise; and (3) he emphasized that he meant the threat when law enforcement officers questioned him about the comment.  Unlike in Watts, there was no evidence that anyone had laughed in response to Castillo's post, and, instead, people interpreted it as a legitimate threat to the President, as evidenced by Alexander's decision to report the post to the Secret Service.  See Watts, 394 U.S. at 708.   Further, although § 871(a) carries an objective standard, see Callahan, 702 F.2d at 966, we still may use evidence of the defendant's subjective intent in order to meet the objective standard -- and indeed, we considered evidence of the defendant's subjective intent in Callahan, including that the defendant later emphasized that he meant what he had said initially.  See id.

Although Castillo emphasizes the conditional nature of his threat, this argument fails because (1) even if the carrying out of the threat was conditional, the threat itself was not conditional, see id.; and (2) at the time Castillo told the Secret Service that he meant what he had said, the President had been re-elected, so that the condition in question had been fulfilled.  Moreover, there is no requirement that Castillo actually intended to kill the President or even have intended to threaten him in order to sustain the conviction.  See Black, 538 U.S. at 359; Martinez, 736 F.3d at 987-88.

8

Finally, the district court did not plainly err by denying the claim -- raised for the first time on appeal -- that the government should have presented the entire Facebook conversation in question.  To sustain a conviction, the government only had to establish that (1) Castillo knowingly and willfully wrote the Facebook post alleged to constitute the threat, (2) Castillo understood the meaning of the words to be an apparent threat, and (3) Castillo wrote the words.  See Callahan, 702 F.2d at 965; Medina, 485 F.3d at 1300.  As the record shows, the government met these elements.  Although the context of the post was relevant to determine whether Castillo's Facebook post constituted a true treat, see Alaboud, 347 F.3d at 1296-97, there is no requirement that the government present the entire Facebook conversation to sustain Castillo's conviction.  Thus, the district court did not plainly err by denying Castillo's Rule 29 motion based on the government's failure to admit the entire Facebook conversation.

**AFFIRMED.**

9