#28086-a-SLZ
**2017 S.D. 76**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    vs.

EDWARD JAMES DRASKOVICH,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE SUSAN M. SABERS
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff and
    appellee.


BEAU J. BLOUIN of
Minnehaha County
   Public Defender's Office
Sioux Falls, South Dakota                    Attorneys for defendant and
    appellant.

\* \* \* \*

ARGUED OCTOBER 3, 2017
OPINION FILED **11/21/17**

ZINTER, Justice

[¶1.]        Edward Draskovich was convicted of threatening a judicial officer and disorderly conduct as a result of statements he made in the Minnehaha County Courthouse.  The circuit court ruled the statements were "true threats" rather than speech protected by the First Amendment.  We affirm.

*Facts and Procedural History*

[¶2.]        The facts are largely undisputed.  Draskovich was convicted in magistrate court of driving under the influence of alcohol, and his pro se appeal to the circuit court was dismissed after he failed to file a brief.  On March 7, 2016, he went to the Minnehaha County Courthouse to inquire about a work permit and to collect the bond he had posted.  He entered the clerk of courts office and spoke about his bond with accounting clerk April Allenstein.  Allenstein had seen Draskovich in the office on prior occasions, and she testified that he was usually "yelling or speaking loudly" because he was often angry about his case.  She described him as "angry and frustrated" when he visited on March 7.  Allenstein informed Draskovich that she could not return his bond because the order to do so was not yet signed by the judge.  Draskovich then went to another counter to ask about a work permit to drive an automobile.  Allenstein testified that she did not "think he got a good answer down there either."

[¶3.]        After receiving these unfavorable responses, Draskovich returned to Allenstein and proclaimed: "Now I see why people shoot up courthouses."  Draskovich then stepped toward the door, opened it, and said: "Not that I would."  Allenstein was "startled and alarmed."  She said Draskovich had never made a

statement like that before. As soon as Draskovich left the office, Allenstein informed security of the incident.

[¶4.] Draskovich then went upstairs to the court-administration office to obtain other documents. He spoke with Brittan Anderson. Anderson said Draskovich was "agitated." When she informed Draskovich that he would have to get copies of his documents from the clerk of courts office, Draskovich began to complain that Judge Mark Salter would not give Draskovich his work permit.[1] Anderson attempted to diffuse his anger by informing him that it was not Judge Salter's fault because Draskovich could not receive a work permit by law until he completed treatment. Draskovich then proclaimed, "Well, that deserves 180 pounds of lead between the eyes," and he left the office. Anderson informed the court administrator of the incident, and security arrived to take her statement. At trial, Anderson testified that she was shocked and surprised by Draskovich's statement. She believed that the statement was directed at Judge Salter. She testified that "no one has ever threatened a judge like that before" and that she had "never heard an actual threat."

[¶5.] The following day, Detective Adam Zishka called Draskovich to discuss the incidents. Draskovich was still angry and frustrated. With respect to the statement made to Allenstein, Draskovich yelled:

> And you wonder why people f***ing come in to these buildings and f***ing go postal and start shooting people . . . because their f***ing dealing with this kind of bull****! That's not f***ing threatening anybody, that's stating the f***ing facts of the world!

---

1. Judge Salter had presided over Draskovich's appeal from magistrate court.

Draskovich also conceded that he had made the statement to Anderson, but clarified that what he actually said was: "There's a good cure for that [inability to issue a work permit] and it's 140 grains of lead."

[¶6.] Draskovich was charged with threatening a judicial officer based on his statement in the court administrator's office. *See* SDCL 22-11-15. He was also charged with disorderly conduct based on his statement in the clerk of courts office. *See* SDCL 22-18-35(1).

[¶7.] At the conclusion of a court trial, the circuit court found Draskovich guilty of both charges. The court ruled his statements were "true threats" rather than speech that was protected by the First Amendment. On appeal, Draskovich argues his statements were protected speech that could not be the basis for criminal conduct.

*Decision*

[¶8.] A statute that "makes criminal a form of pure speech[ ] must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech." *Watts v. United States*, 394 U.S. 705, 707, 89 S. Ct. 1399, 1401, 22 L. Ed. 2d 664 (1969) (per curiam). A statement that constitutes a "true threat" does not fall within the realm of protected speech. *See Austad v. S.D. Bd. of Pardons & Paroles*, 2006 S.D. 65, ¶ 10, 719 N.W.2d 760, 764-65. True threats are

> those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats "protects individuals from the fear of violence" and "from the disruption that fear

> engenders," in addition to protecting people "from the possibility that the threatened violence will occur."

*Virginia v. Black*, 538 U.S. 343, 359-60, 123 S. Ct. 1536, 1548, 155 L. Ed. 2d 535 (2003) (citations omitted) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388, 112 S. Ct. 2538, 2546, 120 L. Ed. 2d 305 (1992)).

[¶9.] To determine whether a statement constitutes a true threat, we "analyze an alleged threat 'in the light of its entire factual context' and decide whether the recipient of the alleged threat could reasonably conclude that it expresses 'a determination or intent to injure presently or in the future.'" *Austad*, 2006 S.D. 65, ¶ 13, 719 N.W.2d at 766 (quoting *United States v. Dinwiddie*, 76 F.3d 913, 925 (8th Cir. 1996)). To determine whether the recipient could reasonably conclude that the statement was a true threat, we consider: (1) "the reaction of those who heard the alleged threat"; (2) "whether the threat was conditional"; (3) "whether the person who made the alleged threat communicated it directly to the object of the threat"; (4) "whether the speaker had a history of making threats against the person purportedly threatened"; and (5) "whether the recipient had a reason to believe that the speaker had a propensity to engage in violence." *Doe v. Pulaski Cty. Special Sch. Dist.*, 306 F.3d 616, 623 (8th Cir. 2002) (en banc); *see also People ex rel. C.C.H.*, 2002 S.D. 113, ¶ 14, 651 N.W.2d 702, 707.[2]

---

2. In *People ex rel. C.C.H.*, 2002 S.D. 113, 651 N.W.2d 702, we applied the Eighth Circuit panel's list of factors in *Doe*. *See id.* ¶ 14, 651 N.W.2d at 707. After *C.C.H.* was released, the en banc court vacated the panel's decision. *Doe*, 306 F.3d at 623-24 (en banc), *vacating* 263 F.3d 833 (8th Cir. 2001). The factors enumerated above reflect the en banc court's view.

[¶10.] We conclude that Draskovich's statements constituted true threats under the relevant factors. First, both witnesses who interacted with Draskovich in the courthouse reacted as if the statements were true threats. Allenstein testified that she was "very startled and alarmed" by Draskovich's statement and that she immediately contacted security. Anderson testified she reacted with "shock" and "surprise" to the statement in her office because she had never heard someone threaten a judge like that before. She also reported the matter to her supervisor, and security was contacted. Neither witness considered Draskovich's statements empty threats.

[¶11.] Judge Salter also viewed the statement in the administration office as a true threat. Judge Salter testified that he took Draskovich's statement as "a threat to fire a round, a rifle round or some sort of round having a certain grain bullet, between my eyes." He testified that this was the only time he had received such a threat. And when asked how that statement impacted him, he said: "I was concerned. And I made a conscious effort to be careful with everything I did and everything around me, in every aspect of my life." These reactions were not unreasonable. As Draskovich's counsel conceded at oral argument, no one thought Draskovich was "kidding around."

[¶12.] Nevertheless, Draskovich points out that despite the reactions of the recipients, he was not stopped by security or immediately apprehended. Draskovich argues that this "suggests law enforcement did not view Draskovich's statements as constituting a serious or immediate threat to anyone's safety." He likens his case to *C.C.H.*, where an eighth-grade student told a teacher he wanted to kill another

student. 2002 S.D. 113, ¶¶ 4-5, 651 N.W.2d at 704. We noted that despite the teacher's subjective fear, she let both students leave class. Additionally, the school's administration did not quickly respond, which supported our conclusion that the defendant's statements were not true threats. *Id.* ¶¶ 16-17, 651 N.W.2d at 707.

[¶13.] However, in *C.C.H.*, the testimony of the recipient of the statements was deemed not "compelling," and the case was largely decided on the other factors. *Id.* ¶ 17. Moreover, that case involved the statements of an eighth grader, and we noted that "[h]ostility and competition among our youth is natural." *Id.* ¶ 18. In contrast, this case involved recipients who were accustomed to dealing with the public in difficult situations yet were nevertheless startled, shocked, and alarmed by Draskovich's statements. Additionally, Draskovich was not an eighth-grade schoolchild; he was a fifty-five-year-old adult who was becoming increasingly angry and agitated at court employees. Therefore, the fact that Draskovich was not immediately apprehended did not make his statements protected speech. The statements were threatening enough to call security and warrant an immediate investigation.

[¶14.] Draskovich's statements were also unconditional. The statement made in *Watts* is illustrative of a conditional threat. There, in the course of a political protest, the defendant stated: "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Watts*, 394 U.S. at 706, 89 S. Ct. at 1400-01. The Supreme Court held this statement was of a conditional nature because it depended upon "induction into the Armed Forces—which [the defendant] vowed would never

occur." *Id.* at 706-07, 89 S. Ct. at 1401. The Court also noted that several people laughed in response. *Id.* at 707.

[¶15.]  In contrast, Draskovich was angry and agitated. Additionally, his statement, "Now I see why people shoot up courthouses," implied direct action. The statement was not conditioned on a future event. We acknowledge that Draskovich combined his shooting statement with a departing statement, "Not that I would." But his coy way of combining the statements did not alleviate Allenstein's concern— it only exacerbated Allenstein's fear that the threatened violence could possibly occur. Draskovich's other statement was clearly unconditional. It directly stated that because he could not get a work permit, someone deserved "180 pound of lead between the eyes."

[¶16.]  Draskovich's statement in the clerk of courts office was also directly communicated to the object of the threat. Although it was not aimed at any particular person, context is important. Draskovich was not getting the answers he wanted from the court staff in the clerk of courts office, and he was becoming angry. In this context, it was certainly reasonable for Allenstein to believe that Draskovich was directly communicating this threat to her because she was one of the people who gave him the news he did not want to hear. We acknowledge that the statement in the court-administration office was not directly communicated to Judge Salter,[3] but that does not dispel its threatening nature. The statement still

---

3.    Draskovich contends his statement in the administration office was ambiguous because it was not clear whether it was directed at Judge Salter or those who enacted the law. However, context is important. Draskovich

(continued . . .)

instilled fear into those who were present. Moreover, because it was made to a court employee, the statement would have most certainly been communicated to Judge Salter.

[¶17.] We finally observe that although Draskovich did not have a history of making threats, the recipients had reason to believe that Draskovich could engage in violence on this occasion. There is no dispute that like his prior visits, Draskovich was visibly agitated, frustrated, and angry; and both witnesses believed he was capable of engaging in violence. Allenstein testified that "the way he looked and the words that he spoke, it wasn't just an empty threat." Based on Draskovich's "history and his behavior the several times" she had encountered Draskovich before, she believed his anger was escalating and that "it just seemed like he was capable."

[¶18.] We conclude that in light of Draskovich's escalating anger at court staff and Judge Salter, Draskovich's statements to employees in the courthouse were not protected speech. In this context, a reasonable recipient would view Draskovich's statements as "a serious expression of an intent to commit an act of unlawful violence" against court staff and Judge Salter. *See Black*, 538 U.S. at 359,

_____

(. . . continued)

was expressing his anger with Judge Salter, and as Anderson's testimony reveals, she interpreted the statement as a threat to Judge Salter.

At oral argument, counsel also contended that this statement "requires too much interpretation" and "too much reading into the terms." However, it is easy to look back on a verbal statement, reduce it to writing, and make a post-hoc determination that the statement was unclear. What matters is whether a reasonable recipient would, *at the time the statement was made*, understand it as a "serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *See Black*, 538 U.S. at 359, 123 S. Ct. at 1548.

123 S. Ct. at 1548. Draskovich may not have actually intended to carry out the threat, but the "prohibition on true threats 'protects individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" *Id.* at 359-60 (quoting *R.A.V.*, 505 U.S. at 388, 112 S. Ct. at 2546). Each of these protections is implicated here. We affirm.

[¶19.] GILBERTSON, Chief Justice, and SEVERSON and KERN, Justices, and WILBUR, Retired Justice, concur.

[¶20.] JENSEN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.