ROBINSON, J.
**153 The principal issue in this appeal is whether the free speech provisions of the first amendment to the United States constitution[1] and article first, §§ 4, 5 and 14, of the Connecticut constitution[2] require **154 the state to prove that a defendant has a specific intent to terrorize another person in order to sustain a conviction of threatening in the first degree under General Statutes § 53a-61aa (a) (3),[3] which criminalizes threatening speech. The defendant, Edward Taupier, sent an e-mail *8 containing threats of violence against a judge of the Superior Court, Elizabeth A. Bozzuto, to a group of acquaintances. The defendant now appeals[4] from the judgment, rendered after a trial to the court, convicting him of threatening in the first degree in violation of § 53a-61aa (a) (3), two counts of disorderly conduct in violation of General Statutes § 53a-182 (a) (2),[5] and breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (3). On appeal, the defendant claims that (1) the trial court improperly denied his motion to dismiss the charge of threatening **155 in the first degree under § 53a-61aa (a) (3) on the ground that the statute is unconstitutional because it did not require the state to prove that he had the specific intent to terrorize Judge Bozzuto,[6] (2) the trial court improperly considered evidence of events that occurred after he sent the threatening e-mail to support its conclusion that he violated that statute, and (3) the evidence was insufficient to establish beyond a reasonable doubt that he violated §§ 53a-61aa (a) (3) and 53a-182 (a) (2). We disagree with the defendant's claims and, accordingly, affirm the judgment of the trial court.
The record reveals the following procedural history and facts that the trial court found or that are undisputed. In 2012, the defendant's wife, Tanya Taupier, initiated an action to dissolve their marriage. Among the contested issues was the custodial status of the couple's two minor children. In August, 2013, the trial court, Carbonneau, J. , ordered that the children reside with Tanya Taupier and attend school in Ellington, where she resided.
In the spring of 2014, Judge Bozzuto, who was responsible for managing the docket of the family court in Hartford, became involved in the defendant's dissolution proceeding. Judge Bozzuto assumed sole responsibility for the management of the case in order to ensure that it would be adjudicated in a timely manner.
On May 23, 2014, Judge Bozzuto ordered the Family Services Unit of the Court Support Services Division (family services unit) to conduct a comprehensive custody evaluation. Shortly thereafter, the family services **156 unit informed Judge Bozzuto that the defendant was interfering with the evaluation by injecting his personal views and opinions concerning the family *9 court system into the process. In response, on June 18, 2014, Judge Bozzuto conducted an in-court proceeding attended by the parties. Judge Bozzuto told the defendant that he was free to express his political beliefs and views of the family court system, but ordered him to refrain from doing so during interviews conducted by the family services unit.
On August 20, 2014, the defendant informed his wife that he had enrolled their children in school in Cromwell, where he resided, in violation of the court order that they attend school in Ellington. On August 22, 2014, counsel for Tanya Taupier sent the defendant drafts of a contempt motion and an application for an emergency ex parte order of custody that she planned to file in court. The defendant, who was representing himself in the divorce proceeding, then sought the advice of several acquaintances who had experience in family court, including Anne Stevenson and Michael Nowacki. At 11:24 p.m. that night, in response to e-mails that he had received from Stevenson, Nowacki, and Jennifer Verraneault regarding the court motions, the defendant sent an e-mail containing threatening statements toward Judge Bozzuto to Stevenson, Nowacki, Susan Skipp, Sunny Kelley, Paul Boyne, and Verraneault, all of whom had been engaged with the defendant for some time in efforts to reform the family court system. Specifically, the defendant's e-mail contained the following statements: (1) "[t]hey can steal my kids from my cold dead bleeding cordite filled fists ... as my [sixty] round [magazine] falls to the floor and [I'm] dying as I change out to the next [thirty rounds]"; (2) "[Bo]zzuto lives in [W]atertown with her boys and [n]anny ... there [are] 245 [yards] between her master bedroom and a cemetery that provides cover and concealment"; and (3) "a [.308 caliber rifle] at 250 [yards] with a double **157 pane drops [one-half inch] per foot beyond the glass and loses [7 percent] of [foot pounds] of force [at] 250 [yards]-nonarmor piercing ball ammunition ...."[7]
In response to the defendant's e-mail, on the morning of August 23, 2014, Nowacki sent an e-mail to the defendant stating: "Ted, [t]here are disturbing comments made in this [e-mail]. You will be well served to NOT send such communications to anyone." The defendant then sent another *10 e-mail to Nowacki and Boyne in which he again suggested that he was contemplating violence against Judge Bozzuto and her family.[8] In turn, Nowacki **158 sent the defendant an e-mail stating the following: "Violence is not a rational response to injustice. Please refrain from communicating with me if you are going to allude to violence as a response."
After reading the defendant's first e-mail on August 23, 2014, Verraneault immediately communicated her concern about it to several people. On the afternoon of August 27, 2014, Verraneault learned of an incident earlier in the day during which Tanya Taupier had gone with a police escort to the school in Cromwell in which the defendant had enrolled their children and removed **159 them from the school. The defendant was present and recorded a video of the removal, while making a series of mocking comments to the police and Tanya Taupier. After learning of this incident, Verraneault feared that it might put the defendant "over the edge." Accordingly, despite fears that she harbored about her own safety if the defendant were to learn that she had disclosed his e-mail concerning Judge Bozzuto, on August 28, 2014, Verraneault sent a screenshot of the contents of the e-mail to an acquaintance who was an attorney, Linda Allard. After discussing the matter with Verraneault, Allard informed Judicial Branch officials and the state police about the e-mail and they, in turn, informed Judge Bozzuto.
Judge Bozzuto testified at trial that, after she learned about the e-mail, "every night when I [got] home ... as soon as ...
*11 I pull[ed] up to the driveway and pull[ed] in ... every time I [got] out of that car I look[ed] up on the hill in the back where all the brush and trees are and [thought] of only [the defendant].... [T]hose bumps in the night, it's when the dogs start[ed] barking in the middle of the night and the first thing that [came] to my mind [was the defendant]." As a result of the e-mail, she "did a massive upgrade of security at the house, installing cameras and lights." Judge Bozzuto also provided her children's school with a mug shot of the defendant and put school officials on alert. State police surveilled her house for a week or two after Judge Bozzuto learned about the e-mail, and judicial marshals escorted her from her office to her car in the evening. Judge Bozzuto also contacted a sister whose daughter was taking care of Judge Bozzuto's dogs, and told her not to let her daughter go to Judge Bozzuto's residence without a police escort.
The defendant was arrested in connection with his first e-mail and ultimately was charged with threatening in the first degree in violation of § 53a-61aa (a) (3) ;
**160 threatening in the second degree in violation of General Statutes (Rev. to 2013) § 53a-62 (a) (3); two counts of disorderly conduct in violation of § 53a-182 (a) (2), one of which alleged that he caused inconvenience, annoyance and alarm to Judge Bozzuto, and one of which alleged that he caused inconvenience, annoyance and alarm to Verraneault; and breach of the peace in violation of § 53a-181 (a) (3).[9]
Before trial, the defendant moved to dismiss all of the charges. With respect to the threatening charges, the defendant contended that the e-mail did not contain speech that was punishable under the first amendment because the threat was not "so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution ...." (Internal quotation marks omitted.) State v. Krijger , 313 Conn. 434, 450, 97 A.3d 946 (2014). In addition, the defendant argued that the threatening charges "fail because the [d]efendant did not communicate the threat to the intended victim." In support of this claim, the defendant cited State v. Kenney , 53 Conn. App. 305, 323, 730 A.2d 119, cert. denied, 249 Conn. 930, 733 A.2d 851 (1999), for the proposition that "[a] threat imports the expectation of bodily harm, thereby inducing fear and apprehension in the person threatened ." (Emphasis added; internal quotation marks omitted.) The trial court, Gold, J. ,[10] summarily denied the motion to dismiss, and the case was tried to the court.
After the trial, the defendant filed another motion to dismiss the charges, claiming that the threatening **161 statutes under which he had been charged were unconstitutional because they required the state to prove only that his conduct in sending the e-mail was in reckless disregard of causing terror to another person; see General Statutes § 53a-61aa (a) (3) and General Statutes (Rev. to 2013) § 53a-62 (a) (3); when, according to the defendant, the first amendment requires proof of specific intent to terrorize another person. The defendant pointed out that, although this court in State v. Krijger , supra, 313 Conn. at 450, 97 A.3d 946, had applied an objective foreseeability standard to determine whether the defendant had made a "true *12 threat" that may be subject to punishment under the first amendment, we had expressly declined to consider whether the first amendment required proof of a specific intent because the defendant in Krijger had raised no such claim and, in any event, he could prevail even under the objective standard.
Relying on Justice Alito's concurring opinion in Elonis v. United States , --- U.S. ----, 135 S.Ct. 2001, 2016-17, 192 L.Ed.2d 1 (2015), the trial court concluded that the state was constitutionally required to prove that the defendant acted recklessly, that is, that the defendant subjectively knew that there was a substantial and unjustifiable risk that his threatening speech would terrorize the target of the threat, and that he acted in conscious disregard of that risk. See General Statutes § 53a-3 (13).[11] Accordingly, the trial court concluded that § 53a-61aa (a) (3), which requires proof of recklessness, was not unconstitutional and denied the defendant's motion to dismiss.
**162 Thereafter, the trial court found the defendant guilty of threatening in the first degree, two counts of disorderly conduct, and breach of the peace in the second degree. In its memorandum of decision, the trial court considered separately the questions of whether (1) the language of the defendant's e-mail constituted a true threat that constitutionally could be punished, and (2) the defendant had knowingly disregarded the risk that the e-mail would cause Judge Bozzuto to be terrorized. With respect to the first issue, the trial court observed that, under State v. Krijger , supra, 313 Conn. at 450, 97 A.3d 946, threatening speech constitutionally may be punished when "a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." (Internal quotation marks omitted.) The trial court ultimately concluded that "a reasonable person not only could foresee, but readily would foresee, that the language in the [defendant's] e-mail would be interpreted by those to whom it was communicated as a serious expression of an intent to commit an act of violence [against] Judge Bozzuto ...." In support of this conclusion, the trial court relied on the e-mail's extremely detailed and specific description of the threatened assault on Judge Bozzuto, the prior relationship between the parties, the circumstances immediately preceding the e-mail, and the fact that firearms that could enable the defendant to carry out his threat were seized from the defendant's residence approximately one week after he sent the e-mail.
The trial court then addressed the question of whether the state had proved the elements of threatening in the second degree in violation of § 53a-62 (a) (3). The trial court disagreed with the defendant's claims that the state had failed to prove that he acted recklessly because "(1) he did not send the e-mail directly to Judge Bozzuto, and (2) those to whom he did send it were seen **163 by him as 'like-minded individuals' who understood and shared his frustration with the family court system." The trial court found that, to the contrary, the evidence "fully support[ed] the reasonable inference that the defendant *13 knew that his e-mail would be seen as a serious expression of his intentions, and was aware of and consciously disregarded the substantial and unjustifiable risk that, as a result, it would be disclosed to others and cause terror to Judge Bozzuto." To support this conclusion, the trial court again relied on the words used in the e-mail, the history between the parties, and the reactions of Nowacki and Verraneault. In addition, the trial court relied on the fact that, upon being admonished by Nowacki for sending the e-mail, the defendant expressed no surprise that Nowacki had interpreted the e-mail as a serious threat of violence and made no attempt to clarify his intent or retract the threat. Rather, the defendant validated Nowacki's interpretation by sending another e-mail reasserting the threat to Judge Bozzuto and, for the first time, threatening her children. Accordingly, the trial court found that the state had established the elements of threatening in the second degree.
The trial court then noted that, with regard to the charge of threatening in the first degree in violation of § 53a-61aa (a) (3), the state was required to prove that the defendant had committed threatening in the second degree and, in committing that offense, had represented by his words that he possessed a firearm. The trial court concluded that the defendant's reference in the e-mail to the .308 caliber rifle satisfied that element. Accordingly, the trial court found the defendant guilty of threatening in the first degree.
Turning to the other charges, the trial court concluded that the state had established the elements of disorderly conduct toward Judge Bozzuto and Verraneault. With respect to the count involving disorderly **164 conduct toward Verraneault, the trial court concluded that the defendant "was aware that she would view [the e-mail] as a serious expression of [the defendant's] intent to shoot Judge Bozzuto, and that ... Verraneault would be disturbed and filled with anxiety as a result of that threatened harm." Finally, the trial court concluded that the state had proven the elements of breach of the peace in the second degree. Accordingly, the trial court found the defendant guilty on both counts of disorderly conduct and of breach of the peace in the second degree. The trial court then rendered a judgment of conviction in accordance with its findings and sentenced the defendant to a total effective sentence of five years imprisonment, execution suspended after eighteen months, and five years probation with special conditions on the charge of threatening in the first degree. This appeal followed. See footnote 4 of this opinion.
On appeal, the defendant first challenges the constitutionality of § 53a-61aa (a) (3) under the free speech provisions of the first amendment to the federal constitution and article first, §§ 4, 5 and 14, of the Connecticut constitution on the grounds that (1) the statute does not require the state to prove that an individual who engaged in threatening speech had the specific intent to terrorize the target of the threat, and (2) even if the statute is constitutional as applied to threatening speech directed at a private individual, proof of specific intent is required when the speech is directed at a public official. He next claims that the trial court improperly considered evidence of certain events, namely, the seizure of firearms from his residence one week after he sent the e-mail concerning Judge Bozzuto, and his second e-mail to Nowacki, in which he again threatened Judge Bozzuto and her family, to support its conclusion that his e-mail was a punishable true threat. Finally, the defendant contends that the evidence was insufficient **165 to establish that he violated § 53a-61aa (a) (3) by sending the e-mail or that he violated § 53a-182 (a) (2) by engaging in *14 disorderly conduct toward Verraneault. We address each of these claims in turn.
I
FREE SPEECH CLAIMS
We first address the defendant's claims that § 53a-61aa (a) (3) is unconstitutional under the free speech provisions of the first amendment to the United States constitution, and article first, §§ 4, 5 and 14, of the Connecticut constitution because the statute does not require the state to prove that the person who engaged in the threatening speech had the specific intent to terrorize the target of the threat.[12] We conclude in part I A of this opinion that the statutory recklessness standard is constitutional under the first amendment when threatening speech is directed at a private individual. In part I B of this opinion, we conclude that the statutory recklessness standard is also constitutional under the free speech provisions of the state constitution. In part I C of this opinion, we consider and reject the defendant's suggestion that a higher mens rea standard is required under both the federal and state constitutions when threatening speech is directed at a public official.[13]
**166 We begin by noting the well established principle that determining the constitutionality of a statute presents a question of law subject to plenary review. See, e.g., Kerrigan v. Commissioner of Public Health , 289 Conn. 135, 155, 957 A.2d 407 (2008).
A
We first address the defendant's claim that the first amendment required the state to prove that he had the specific intent to terrorize Judge Bozzuto before he could be punished for the threatening speech in his e-mail.[14] As we have explained, *15 in this part of our opinion, we limit our consideration to the federal constitutional standard for threatening speech directed at a private individual. We disagree with the defendant's claim.
We begin with a review of the first amendment principles applicable to statutes that criminalize threatening speech. "The [f]irst [a]mendment, applicable to the **167 [s]tates through the [f]ourteenth [a]mendment, provides that Congress shall make no law ... abridging the freedom of speech. The hallmark of the protection of free speech is to allow free trade [of] ideas-even ideas that the overwhelming majority of people might find distasteful or discomforting.... Thus, the [f]irst [a]mendment ordinarily denies a [s]tate the power to prohibit dissemination of social, economic and political doctrine [that] a vast majority of its citizens believes to be false and fraught with evil consequence....
"The protections afforded by the [f]irst [a]mendment, however, are not absolute, and we have long recognized that the government may regulate certain categories of expression consistent with the [c]onstitution.... The [f]irst [a]mendment permits restrictions [on] the content of speech in a few limited areas, which are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality....
"Thus, for example, a [s]tate may punish those words [that] by their very utterance inflict injury or tend to incite an immediate breach of the peace.... Furthermore, the constitutional guarantees of free speech and free press do not permit a [s]tate to forbid or proscribe advocacy of the use of force or of law violation except [when] such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.... [T]he [f]irst [a]mendment also permits a [s]tate to ban a true threat....
"True threats encompass those statements [through which] the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.... The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protect[s] individuals from the fear of violence and from **168 the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur....
"Thus, we must distinguish between true threats, which, because of their lack of communicative value, are not protected by the first amendment, and those statements that seek to communicate a belief or idea, such as political hyperbole or a mere joke, which are protected." (Citation omitted; internal quotation marks omitted.) State v. Krijger , supra, 313 Conn. at 448-50, 97 A.3d 946.
Until 2003, the objective foreseeability test, under which the state must prove that a reasonable person would interpret the defendant's threatening speech as a serious threat before the defendant may be punished for the speech, was universally acknowledged by federal courts as the proper constitutional standard for identifying punishable true threats under the first amendment. See *16 Doe v. Pulaski County Special School District , 306 F.3d 616, 622 (8th Cir. 2002) ("[a]ll the [federal circuit courts of appeals] to have reached the issue have consistently adopted an objective test that focuses on whether a reasonable person would interpret the purported threat as a serious expression of an intent to cause a present or future harm"); see also State v. DeLoreto , 265 Conn. 145, 156, 827 A.2d 671 (2003) (under federal constitution, "[w]hether a particular statement may properly be considered to be a threat is governed by an objective standard-whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault" [internal quotation marks omitted] ).
As we recognized in State v. Krijger , supra, 313 Conn. at 451-52 n.10, 97 A.3d 946, however, this general consensus was shaken by the decision of the United States Supreme Court in Virginia v. Black , 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003), which led to a split in authority **169 among the federal circuit courts of appeals about whether the true threats doctrine requires proof of subjective intent to intimidate the recipient of the threat or, instead, requires proof of objective foreseeability. In Black , the court considered the constitutionality of a Virginia statute providing in relevant part that "[i]t shall be unlawful for any person or persons, with the intent of intimidating any person or group of persons, to burn, or cause to be burned, a cross on the property of another, a highway or other public place." (Internal quotation marks omitted.) Id., at 348, 123 S.Ct. 1536. In an opinion authored by Justice O'Connor, a majority of the court observed that " '[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Id., at 359, 123 S.Ct. 1536. The majority further observed that "[i]ntimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." Id., at 360, 123 S.Ct. 1536. Accordingly, the majority concluded that "[t]he [f]irst [a]mendment permits Virginia to outlaw cross burnings done with the intent to intimidate ...." Id., at 363, 123 S.Ct. 1536.
A plurality of the court also held, however, that a provision of the Virginia statute stating that "[a]ny such burning of a cross shall be prima facie evidence of an intent to intimidate a person or group of persons" was unconstitutional on its face because it did not differentiate between cross burnings that were intended to intimidate and other cross burnings and, therefore, "would create an unacceptable risk of the suppression of ideas."[15] (Internal quotation *17 marks omitted.) Id., at 363-66, 123 S.Ct. 1536 ; **170 see also id., at 367, 123 S.Ct. 1536 (provision "ignore[d] all of the contextual factors that are necessary to decide whether a particular cross burning is intended to intimidate " [emphasis added] ).
As we observed in State v. Krijger , supra, 313 Conn. at 451-52 n.10, 97 A.3d 946, several courts have concluded that the statement of the majority in Virginia v. Black , supra, 538 U.S. at 360, 123 S.Ct. 1536, that "a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death" constitutes a true threat as well as the statement of the plurality suggesting that the finder of fact must determine whether the defendant "intended to intimidate"; id., at 367, 123 S.Ct. 1536 ; show that the Supreme Court intended to adopt a specific intent standard.[16] Most of the courts that have addressed the issue, **171 however, have held that Black did not overrule the objective foreseeability standard.[17] Several of these courts have reasoned that, although the court's statements in Black indicate that a speaker who has the specific intent to intimidate constitutionally may be punished for his speech, they do not support the proposition a speaker constitutionally may be punished only when he has a specific intent to intimidate. See United States v. Martinez , 736 F.3d 981, 987 (11th Cir. 2013) (under Black , "intimidation is but *18 one type of true threat," and court did not intend to require specific intent to intimidate for all true threats), vacated on other grounds, --- U.S. ----, 135 S. Ct. 2798, 192 L.Ed. 2d 842 (2015) ; United States v. Jeffries , 692 F.3d 473, 480 (6th Cir. 2012) (stating that court in Black merely observed "that intimidation is one type of true threat" [emphasis in original; internal quotation marks omitted] ), cert. denied, 571 U.S. 817, 134 S.Ct. 59, 187 L.Ed.2d 25 (2013) ; **172 People v. Stanley , 170 P.3d 782, 789 (Colo. App. 2007) (stating that court in Black merely defined intimidation as one type of true threat), cert. denied, Colorado Supreme Court, Docket No. 07SC575, 2007 WL 4099205 (November 19, 2007), cert. denied, 552 U.S. 1297, 128 S.Ct. 1750, 170 L.Ed.2d 541 (2008).
Several courts have also concluded that the plurality in Black held that the prima facie evidence provision of the cross burning statute was unconstitutional because the plurality was concerned that cross burning could be punished under that provision even when it was not reasonably foreseeable that anyone would be intimidated or terrorized, not because the statute failed to require proof of specific intent. Thus, these courts have reasoned, the plurality in Black was focused more on the Virginia cross burning statute's failure to differentiate between different levels of intent than on the specific mens rea that is constitutionally required before a person may be punished for threatening speech. See United States v. Martinez , supra, 736 F.3d at 986-87 (" Black was primarily a case about the overbreadth of a specific statute-not whether all threats are determined by a subjective or objective analysis in the abstract"); United States v. Jeffries , supra, 692 F.3d at 479-80 ( Black "did not turn on subjective versus objective standards for construing threats. It turned on overbreadth-that the statute lacked any standard at all."); United States v. White , 670 F.3d 498, 511 (4th Cir. 2012) ("[w]hile the Black discussion was ... concerned with the fact that criminalizing cross burning without proof of any intent to intimidate would be unconstitutional, the [c]ourt did not engage in any discussion that proving true threats ... required a subjective, rather than objective, analysis" [emphasis in original] ); United States v. Mabie , 663 F.3d 322, 332 (8th Cir. 2011) (" Black ... did not hold that the speaker's subjective intent to intimidate or threaten is required in order for a communication to constitute a true threat. Rather, the **173 [c]ourt determined that the statute at issue in Black was unconstitutional because the intent element that was included in the statute was effectively eliminated by the statute's provision rendering any burning of a cross on the property of another prima facie evidence of an intent to intimidate.").
Finally, one state court that has rejected the claim that Black adopted a subjective intent requirement reasoned that the purpose underlying the true threats doctrine, namely, protecting the targets of threats from the fear of violence, would not be "served by hinging constitutionality on the speaker's subjective intent ...." (Internal quotation marks omitted.) People v. Stanley , supra, 170 P.3d at 789, quoting Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists , 290 F.3d 1058, 1076 (9th Cir. 2002), cert. denied, 539 U.S. 958, 123 S.Ct. 2637, 156 L.Ed.2d 655 (2003).
We are persuaded by the reasoning of the courts that have concluded that Black did not adopt a subjective intent standard. Indeed, nothing in Black itself suggests that the court intended to overrule the preexisting consensus among the federal circuit courts of appeals that threatening speech may be punished under the first amendment when a reasonable person would interpret the speech as a serious *19 threat. We also note that, in State v. DeLoreto , supra, 265 Conn. at 154, 827 A.2d 671, this court cited Black , and we did not suggest that the decision had affected the objective foreseeability test in any way. Accordingly, we conclude that the first amendment does not require the state to prove that the defendant had the specific intent to terrorize Judge Bozzuto before he could be punished for his threatening speech.
Having rejected the defendant's claim that the first amendment requires proof of a subjective intent, we need not determine whether the objective foreseeability **174 standard, which requires the state to prove that "an objective listener would readily interpret the [threatening] statement as a real or true threat"; State v. Krijger , supra, 313 Conn. at 460, 97 A.3d 946 ; but which does not require the state to prove that the defendant subjectively knew that the threat would be interpreted as a serious one, satisfies the first amendment. Even if we were to assume that proof of subjective knowledge is constitutionally required, § 53a-61aa (a) (3) satisfies that requirement because it requires the state to prove the element of reckless disregard, namely, that the defendant violated § 53a-62 (a) (3) by "threaten[ing] to commit [a] crime of violence in reckless disregard of the risk of causing ... terror" to another person. Put another way, the state must show that the defendant was aware of and consciously disregarded a substantial and unjustifiable risk that the target of the threat would be terrorized. See General Statutes § 53a-3 (13). We conclude, therefore, that § 53a-61aa (a) (3) is constitutional under the first amendment as applied to threatening speech directed at a private individual.
B
We next address the defendant's claim that the free speech provisions of article first, § 4, 5 and 14, of the Connecticut constitution provide greater protection than does the first amendment, and require the state to prove that an individual had the specific intent to terrorize the target of the threat before that person may be punished for threatening speech directed at a private individual. Specifically, the defendant relies on this court's statement in State v. Linares , 232 Conn. 345, 380, 655 A.2d 737 (1995), that the state constitution "bestows greater expressive rights on the public than that afforded by the federal constitution." Accord Leydon v. Greenwich , 257 Conn. 318, 349, 777 A.2d 552 (2001). We again disagree and conclude that the Connecticut constitution does not require the state to prove **175 that a defendant had the specific intent to terrorize the target of the threat before that person may be punished for threatening speech directed at a private individual.
"[I]n determining the contours of the protections provided by our state constitution, we employ a multifactor approach that we first adopted in [ State v. Geisler , 222 Conn. 672, 685, 610 A.2d 1225 (1992) ]. The factors that we consider are (1) the text of the relevant constitutional provisions; (2) related Connecticut precedents; (3) persuasive federal precedents; (4) persuasive precedents of other state courts; (5) historical insights into the intent of [the] constitutional [framers]; and (6) contemporary understandings of applicable economic and sociological norms [otherwise described as public policies].... We have noted, however, that these factors may be inextricably interwoven, and not every [such] factor is relevant in all cases." (Internal quotation marks omitted.) State v. Kono , 324 Conn. 80, 92, 152 A.3d 1 (2016).
In the present case, because neither the constitutional text nor the relevant federal *20 case law supports his position,[18] the defendant relies primarily on the holdings and dicta of decisions from this state's appellate courts, in particular State v. Linares , supra, 232 Conn. at 345, 655 A.2d 737, to support his claim that the state constitution requires proof of a specific intent to terrorize. We are not persuaded. In Linares , the defendant pleaded nolo contendere to charges of intentional interference with the legislative process in violation of General Statutes § 2-1d (a) (2) (C) and (E) in connection with an incident in which she unfurled a banner and loudly chanted in the gallery of the hall of the House of Representatives **176 during the governor's budget address. State v. Linares , supra, at 347-54, 655 A.2d 737. The defendant contended that § 2-1d (a) (2) (C) and (E) was overbroad in violation of the speech provisions of the state constitution. Id., at 376-77, 655 A.2d 737. To resolve this issue, this court was required to decide whether the state constitution incorporated the rigid forum analysis, which was the standard under the federal constitution, or, instead, the state constitution incorporated the "more flexible, fact specific [compatibility] approach," under which courts consider "whether the particular speech in issue was consistent with the uses of the specific public property involved." Id., at 377-78, 655 A.2d 737. Noting that the more flexible compatibility approach "is designed to maximize the speech which the government is constitutionally required to tolerate, consistent with the appropriate and needful use of its property," this court concluded that the state constitution incorporated that approach. (Internal quotation marks omitted.) Id., at 383-84, 655 A.2d 737.
Nothing in either Linares or Leydon v. Greenwich , supra, 257 Conn. at 318, 777 A.2d 552, suggests, however, that the government is constitutionally required to tolerate threatening speech when the speaker acted in reckless disregard and was aware that there was a substantial and unjustifiable risk that the speech would be interpreted as a serious threat. Nor does the defendant contend that the other Geisler factors, namely, constitutional history and public policy, support his position. Accordingly, we conclude that § 53a-61aa (a) (3) does not violate the free speech provisions of the state constitution because those provisions protect a broader range of threatening speech than does the first amendment.
C
We next address the defendant's claim that threatening speech that is directed at a public official is subject to a higher standard than speech directed at a private **177 individual under the free speech provisions of both the federal and state constitutions. We disagree with both claims.
1
We first consider whether the first amendment imposes a higher mens rea standard on threatening speech directed at public officials. The defendant contends that, because a statute criminalizing political advocacy of the use of force or of lawlessness violates the first amendment unless "such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action"; (emphasis added) Brandenburg v. Ohio , 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) ; threatening speech directed *21 at public officials is punishable only if the speaker had a specific intent to terrorize the official. He cites no authority for this proposition, however, and our independent research reveals that courts have uniformly concluded that, if threatening speech directed at a public official satisfies the traditional true threats doctrine, it is not constitutionally protected.[19] **178 We emphasize that courts must carefully scrutinize the evidence in cases involving charges of threats against public officials to ensure that the speech at issue was, in fact, a true threat, and not constitutionally protected political advocacy. See Watts v. United States , 394 U.S. 705, 707, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (threatening statute "must be interpreted with the commands of the [f]irst [a]mendment clearly in mind" and "[w]hat is a threat must be distinguished from what is constitutionally protected speech"); see also United States v. Turner , 720 F.3d 411, 420 and n.4 (2d Cir. 2013) (distinguishing between advocacy of violence, which is constitutionally protected speech, and true threats, which are not), cert. denied, --- U.S. ----, 135 S.Ct. 49, 190 L.Ed.2d 29 (2014). If the evidence establishes beyond a reasonable doubt, however, that the defendant's threatening speech was "so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution"; (internal quotation marks omitted) State v. Krijger , supra, 313 Conn. at 450, 97 A.3d 946 ; and that the defendant had the constitutionally required mens rea for true threats directed at private individuals, we cannot perceive why his speech should, nevertheless, be protected because it was directed at a public official. Unlike passionate disagreement with existing **179 laws and abstract advocacy of the violent overthrow of the *22 government, true threats have no social value. See State v. DeLoreto , supra, 265 Conn. at 163, 827 A.2d 671 ("[t]rue threats have no communicative value but, rather, are words [used] as projectiles where no exchange of views is involved" [internal quotation marks omitted] ); cf. Rice v. Paladin Enterprises, Inc. , 128 F.3d 233, 243 (4th Cir. 1997) ("[A] right to advocate lawlessness is, almost paradoxically, one of the ultimate safeguards of liberty. Even in a society of laws, one of the most indispensable freedoms is that to express in the most impassioned terms the most passionate disagreement with the laws themselves, the institutions of, and created by, law, and the individual officials with whom the laws and institutions are entrusted."), cert. denied, 523 U.S. 1074, 118 S.Ct. 1515, 140 L.Ed.2d 668 (1998). Accordingly, we conclude that § 53a-61aa (a) (3) is not unconstitutional as applied to threatening speech directed at public officials under the first amendment.
2
We next address the defendant's contention that the free speech provisions of the Connecticut constitution require the state to prove that the defendant had a specific intent to terrorize when threatening speech is directed at public officials. In support of this claim, the defendant relies on the text of article first, § 14, of the Connecticut constitution, which provides that citizens have a right "to apply to those invested with the powers of government, for redress of grievances ... by petition, address or remonstrance." The defendant contends that his e-mail regarding Judge Bozzuto was a "remonstrance" within the meaning of this provision and, therefore, it was constitutionally protected. We disagree.
Without additional analysis explicating the term "remonstrance," we find it difficult to reconcile the **180 defendant's claim that the purpose of his e-mail was "to apply to those invested with the powers of government, for redress of grievances" with his contention that he did not intend for Judge Bozzuto to receive the e-mail. In any event, article first, § 14, of the Connecticut constitution expressly guarantees the right to apply to government officials for the redress of grievances only if the redress is sought "in a peaceable manner ...." A statement that is a true threat would, ipso facto, not be one seeking redress in a peaceable manner. Accordingly, we conclude that the constitutional framers did not intend to protect the right to seek redress from a public official by way of a "remonstrance" when the speaker was aware that there was a substantial and unjustifiable risk that the public official would interpret the "remonstrance" as a serious threat of violence. We conclude, therefore, that § 53a-61aa (a) (3) is constitutional under the state constitution as it is applied to threatening speech directed at public officials.
II
EVIDENTIARY CLAIMS
We next address the defendant's claim that the trial court improperly admitted evidence of events that occurred after he sent the e-mail to support its conclusion that the defendant violated § 53a-61aa (a) (3). Specifically, he contends that the trial court improperly admitted (1) evidence that firearms were seized from the defendant's residence one week after he sent the e-mail, and (2) the defendant's second e-mail to Nowacki, in which he reiterated his threats against Judge Bozzuto, because this evidence was irrelevant. We agree with the defendant's first claim, but conclude that the impropriety was harmless. We disagree, however, with his second claim.
*23 Before turning to the defendant's evidentiary claims, we note that he has cast them as sufficiency of the **181 evidence claims, predicated on the trial court's improper consideration of the challenged evidence. Because the defendant's arguments, in essence, attack the relevancy of the challenged evidence when considered by the trial court as the trier of fact, we view those claims as evidentiary in nature. The defendant has not, however, indicated how these evidentiary claims were preserved for review. Nevertheless, because the state does not object on preservation grounds, and because the defendant cannot prevail on the claims in any event, we review their merits. See Blumberg Associates Worldwide, Inc. v. Brown & Brown of Connecticut, Inc. , 311 Conn. 123, 157-58, 84 A.3d 840 (2014) ("[r]eview of an unpreserved claim may be appropriate ... when ... the party who raised the unpreserved claim cannot prevail" [citation omitted; footnote omitted] ).
"Our standard of review for evidentiary claims is well settled. To the extent [that] a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review.... We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law, however, for an abuse of discretion.... The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination.... Thus, [w]e will make every reasonable presumption in favor of upholding the trial court's [rulings on these bases]." (Citations omitted; internal quotation marks omitted.) State v. Davis , 298 Conn. 1, 10-11, 1 A.3d 76 (2010). Because the defendant in the present case contends that the trial court improperly admitted evidence of events that occurred after the defendant sent the threatening e-mail on the ground **182 that the evidence was irrelevant, we review the trial court's action for abuse of discretion.
A
We first address the defendant's claim that the trial court improperly considered evidence that firearms were seized from his home approximately one week after he sent the threatening e-mail to support its conclusion that the defendant violated § 53a-61aa (a) (3). The record reveals the following additional relevant facts. The state presented evidence that, during their investigation of the defendant, the police obtained a "risk warrant" pursuant to General Statutes § 29-38c, authorizing them to enter the defendant's residence and to seize any firearms and ammunition that they found there. Upon executing the warrant, the police found and seized fifteen firearms and multiple rounds of ammunition. The police subsequently learned that, in March, 2013, the family court had issued an order prohibiting the defendant from possessing any firearms. In accordance with that order, the defendant had surrendered a number of firearms to a friend. When the police went to that friend's residence on September 2, 2014, he confirmed that he had received thirteen firearms from the defendant in March, 2013. During the summer of 2014, however, the defendant had indicated that he wanted them back. On August 27, 2014, five days after sending the e-mail, the defendant went to his friend's residence and retrieved six of the firearms. The friend turned over the remaining firearms to the police. Thereafter, the police examined the fifteen firearms that had been seized from the defendant's residence and determined that four of them *24 were capable of accurately firing a projectile 245 yards, the distance to which the defendant had referred in his e-mail. The trial court concluded that, under State v. Krijger , supra, 313 Conn. at 456 n.11, 97 A.3d 946, it could rely on this evidence to support a **183 finding that the defendant "possessed the skills or wherewithal necessary to carry out [his] threat." Id.
In Krijger , however, this court concluded only that knowledge by the target of a threat that the defendant had the means to carry out the threat can support the inference that the target would reasonably interpret the threat to be serious. See id. We did not suggest that the same inference may be drawn when the defendant had the means to carry out the threat, but the target was unaware of that fact. In this regard, we emphasize that § 53a-61aa (a) (3) does not allow a person to be punished for a thought-namely, having the subjective intent to carry out a threat. Rather, it allows threatening speech to be punished when the speaker was aware that there was substantial and unjustifiable risk that the speech would be interpreted as a serious threat of violence, regardless of the speaker's actual intentions. See Virginia v. Black , supra, 538 U.S. at 360, 123 S.Ct. 1536 ("a prohibition on true threats protect[s] individuals from the fear of violence and from the disruption that fear engenders" [internal quotation marks omitted] ); Roberts v. State , 78 Ark. App. 103, 108, 78 S.W.3d 743 (2002) (essence of threat is "communication"). Because there is no evidence in the present case that either the recipients of the e-mail or Judge Bozzuto knew that the defendant actually possessed firearms when they received the e-mail, that fact could have no bearing on whether they would interpret the e-mail as a serious threat.[20] Accordingly, we conclude that the trial court improperly admitted this evidence.
**184 We also conclude, however, that the defendant has failed to prove that the impropriety was harmful. As we discuss more fully in part III of this opinion, the other evidence supporting the trial court's conclusion that the defendant violated § 53a-61aa (a) (3), including the extremely detailed and disturbing language of the defendant's e-mail, the reactions of Nowacki and Verraneault, Judge Bozzuto's reaction, the defendant's extreme animosity toward the family court system, with which he interacted primarily through Judge Bozzuto, the contentious history between the defendant and Judge Bozzuto, and the events immediately preceding the sending of the e-mail, was extremely strong. See State v. Swinton , 268 Conn. 781, 797-98, 847 A.2d 921 (2004) ("to establish reversible error on an evidentiary impropriety, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse" [internal quotation marks omitted] ); see also State v. Mitchell , 296 Conn. 449, 460, 996 A.2d 251 (2010) (harmfulness determination must be made in light of entire record including overall strength of state's case without evidence admitted in error). Accordingly, we conclude that the evidentiary impropriety in the admission of the firearms evidence was harmless and, therefore, does not require reversal of the defendant's conviction.
*25 B
The defendant also claims that the trial court improperly relied on his second e-mail to Nowacki to support the conclusion that the defendant was aware that there was a significant and unjustifiable risk that his initial e-mail would be interpreted as a serious threat. Specifically, the trial court concluded that the fact that the defendant expressed no surprise that Nowacki had interpreted the e-mail as a serious threat of violence and made no attempt to clarify his intent or retract the threat but, instead, reiterated his threats against Judge Bozzuto and also threatened her children, showed that **185 the defendant was aware that his first e-mail would be interpreted as a serious threat. The defendant again contends that the trial court should have considered only the circumstances that existed at the time that the defendant sent the first e-mail when determining whether that e-mail contained a serious threat.
This court, however, has expressly recognized that "evidence of the conduct of a defendant subsequent to the commission of a crime is admissible to show the defendant's state of mind at the time of the crime." (Internal quotation marks omitted.) State v. Croom , 166 Conn. 226, 230, 348 A.2d 556 (1974). Although the defendant's second e-mail to Nowacki had no bearing on the question of whether the recipients of the first e-mail would have interpreted it as a serious threat, the trial court reasonably could have concluded that it was relevant to the issue of whether the defendant was aware when he sent the first e-mail that it would be interpreted in that manner. Specifically, the trial court reasonably could have inferred that, if the defendant had been unaware when he sent the first e-mail that it would be interpreted as a serious threat, he would have reacted quite differently to Nowacki's characterization of the e-mail as "disturbing" and his admonition to the defendant to refrain from making such statements. We conclude, therefore, that the trial court did not abuse its discretion when it considered this evidence.
III
SUFFICIENCY OF THE EVIDENCE CLAIMS
A
We next address the defendant's contention that the evidence was insufficient to convict him of threatening in the first degree in violation of § 53a-61aa (a) (3). Specifically, the defendant contends that the state failed to satisfy the constitutional requirement that (1) it was **186 objectively foreseeable that the e-mail would be interpreted as a serious threat, and (2) it was reasonably foreseeable that Judge Bozzuto would be terrorized by his e-mail when the defendant did not send the e-mail to her. The defendant fails to recognize, however, that, even if the constitutional standard is objective foreseeability, an issue that we have declined to decide in the present case,[21] § 53a-61aa (a) (3) required the state to prove the higher recklessness standard.[22] Thus, the questions that we must *26 address are whether the evidence was sufficient to establish beyond a reasonable doubt that (1) the defendant was aware that there was a substantial and unjustifiable risk that the language of the e-mail would be interpreted as a serious threat, and (2) the defendant was aware that there was a substantial and unjustifiable risk that Judge Bozzuto would be terrorized by the e-mail even though he did not communicate it to her directly. We conclude that the evidence was sufficient to establish beyond a reasonable doubt that the defendant committed the crime of threatening in the first degree.
"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the **187 sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt....
"We also note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt.... If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt....
"Additionally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt ... nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal.... On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Citations omitted; internal quotation marks omitted.) State v. Morgan , 274 Conn. 790, 799-800, 877 A.2d 739 (2005).
To convict a defendant of threatening in the first degree in violation of § 53a-61aa (a) (3), the state must **188 prove that (1) the defendant committed threatening in the second degree in violation of § 53a-62, and (2) in committing that offense, the defendant represented by his words that he possessed a firearm. To prove that the defendant committed threatening in the second degree in violation of § 53a-62 (a) (3), the state must prove beyond a reasonable doubt that (1) the defendant threatened to commit a crime of violence, and (2) in doing so, the *27 defendant acted in reckless disregard of the risk of causing terror to another person. Pursuant to § 53a-3 (13), "[a] person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation ...." Thus, to convict a defendant of the crime of threatening in the second degree in violation of § 53a-62 (a) (3), the state must prove that the defendant was aware of and consciously disregarded a substantial and unjustifiable risk that his threatening speech would cause terror to another person, that is, that the person being threatened would interpret the threat as a serious one. As we explain more fully in part III A 2 of this opinion, when the threat has been conveyed to a third party, the state must also prove that the defendant knew that there was a substantial and unjustifiable risk that the third party would communicate the threat to its target.
"Recognizing the difficulty in proving by direct evidence that an accused subjectively realized and chose to ignore a substantial risk ... we have long held that the state of mind amounting to recklessness ... may be inferred from conduct." (Internal quotation marks omitted.)
**189 State v. Salz , 226 Conn. 20, 33, 627 A.2d 862 (1993) ; see also State v. Tucker , 181 Conn. 406, 415, 435 A.2d 986 (1980) (although conduct prior to offense did not in and of itself prove intent to murder, it was relevant to establish, in connection with question of intent, pattern of behavior and attitude toward victim that was indicative of defendant's state of mind). Accordingly, it may be inferred from evidence that the defendant engaged in speech that a reasonable person would interpret as a serious threat that the defendant himself was aware that there was a substantial and unjustifiable risk that the speech would be so interpreted.[23] Similarly, proof beyond a reasonable doubt that a reasonable person would be aware that there was a substantial and unjustifiable risk that a threat that was communicated to a third party would *28 subsequently be communicated to the target of the threat would support the inference that the defendant was aware of that risk. **190 1
With these principles in mind, we first consider whether the evidence was sufficient to establish beyond a reasonable doubt that the defendant was aware that there was a substantial and unjustifiable risk that the recipients of his e-mail would interpret it as a serious threat. In making this determination, we consider the language used by the defendant; State v. Krijger , supra, 313 Conn. at 452, 97 A.3d 946 ; the context in which the statements were made, including the reactions of the persons to whom the threat was communicated; id., at 454-55, 97 A.3d 946 ; "the prior relationship between the parties"; id., at 454, 97 A.3d 946 ; and "the immediate circumstances surrounding the alleged threat ...."[24] Id.
We turn first to the contents of the defendant's first e-mail. That e-mail stated: "The court is dog shit and has no right to shit they don't have a rule on"; "there [are] 245 [yards] between [Judge Bozzuto's] master bedroom and a cemetery that provides cover and concealment"; "[t]hey could try and put me in jail but that would start the ringing of a bell that can be undone"; "[s]omeone wants to take my kids better have an [F-35 fighter jet] and smart bombs ... otherwise they will be found and adjusted ... they should seek shelter on the ISS ( [international] space station)"; "a [.308 caliber rifle] at 250 [yards] with a double pane drops [one-half inch] per foot beyond the glass and loses [7 percent] of [foot pounds] of force [at] 250 [yards]-nonarmor piercing ball ammunition"; and "unless you sleep with level [three] body armor or live on the [international space station] you should be careful of actions." Judge Bozzuto testified that the descriptions of her residence and the surrounding area were **191 accurate. Thus, the defendant's e-mail made it clear that he was extremely angry at the "court," over which Judge Bozzuto had presided, that he had discovered where she lived, that he had surveilled her residence, that he had thought through a very detailed and specific way to kill her at that location, and that he had anticipated being punished for his conduct. Although the defendant did not explicitly say that he was going to shoot Judge Bozzuto, we have recognized that "rigid adherence to the literal meaning of a communication ... would render [statutes proscribing true threats] powerless against the ingenuity of threateners who can instill in the victim's mind as clear an apprehension of impending injury by an implied menace as by a literal threat." (Internal quotation marks omitted.) State v. Krijger , supra, 313 Conn. at 453, 97 A.3d 946. We conclude, therefore, that the language of the defendant's e-mail conveyed the clear connotation that he was seriously contemplating violence against Judge Bozzuto.
Indeed, the reactions of Nowacki, who called the e-mail disturbing, warned the defendant to refrain from making such statements, and admonished him that violence was not a solution, and Verraneault, who immediately contacted several people to express her concern and ultimately took steps to warn Judge Bozzuto, indicate that *29 this is how they, in fact, interpreted the defendant's e-mail.[25] In addition, Judge Bozzuto's fearful **192 reaction and the steps that she took to protect herself and her family from the defendant, including installing security equipment and warning her niece not to go to her house without a police escort, show that she believed the defendant's threats were serious.
The history between the defendant and Judge Bozzuto, along with the events immediately preceding the e-mail, also support the conclusion that the defendant was aware that there was a substantial and unjustifiable risk that the recipients of the e-mail and Judge Bozzuto would interpret it as a serious threat. One of the recipients of the e-mail, Kelley, testified that, during her dealings with the family court system, her feelings ran the "full gamut of every horrible thing that you can imagine. I've been angry, I've been sad, I've been despondent. There [are] no words. Apoplectic. I mean, it's the full gamut of terror. It's absolute terror." Kelley testified that she expressed those feelings to the defendant "[b]ecause he was experiencing something similar." The trial court reasonably could have inferred from this testimony that the other e-mail recipients, all of whom had been engaged with the defendant in efforts to reform the family court system, were equally aware that the defendant harbored such feelings toward the family court system, which Judge Bozzuto represented.
The state also presented evidence in the form of testimony by Tanya Taupier that the defendant's demeanor throughout the course of the divorce proceeding had been contentious and adversarial to all court personnel involved in the case. In addition, there was evidence that, on June 18, 2014, Judge Bozzuto had admonished the defendant in court to stop interjecting his political views into the custody evaluation that was being performed by the family services unit.[26] Although **193 there was no specific evidence that the e-mail recipients were aware of the details of this particular interaction between the defendant and Judge Bozzuto, the trial court reasonably could have inferred that the interaction would have reinforced the defendant's negative feelings toward the family court and Judge Bozzuto, and that the members of the informal family court reform group would have been generally aware of his growing animosity and frustration. *30 In addition, the state presented evidence that the defendant had enrolled his children in school in Cromwell, where the defendant lived, in defiance of the court order requiring that the children attend school in Ellington, where Tanya Taupier lived. In response, on August 22, 2014, the same day that the defendant sent the threatening e-mail, counsel for Tanya Taupier sent the defendant drafts of a contempt motion and an application for an emergency ex parte order of custody that she planned to file with the family court and, more specifically, Judge Bozzuto. The recipients of the e-mail and Judge Bozzuto were aware of these developments in the case when they received the defendant's e-mail.
We conclude this evidence was sufficient to establish beyond a reasonable doubt that, as the trial court stated, "a reasonable person not only could foresee, but readily would foresee, that the language in the e-mail would be interpreted by those to whom it was communicated as a serious expression of an intent to commit an act of violence [against] Judge Bozzuto ...." (Emphasis in original.) As we have explained, in the absence of any evidence to the contrary, proof beyond a reasonable doubt that a reasonable person would interpret threatening **194 speech as a serious threat supports the inference that the speaker was aware that the speech would be interpreted in that manner. Cf. State v. Salz , supra, 226 Conn. at 33, 627 A.2d 862 ("the state of mind amounting to recklessness ... may be inferred from conduct" [internal quotation marks omitted] ). Moreover, as we explained in part II B of this opinion, the second e-mail that the defendant sent to Nowacki and Boyne in response to Nowacki's e-mail characterizing the defendant's first e-mail as "disturbing," and urging the defendant to refrain from making such statements, supports the inference that the defendant was subjectively aware when he sent the first e-mail that there was a substantial and unjustifiable risk that it would be interpreted as a serious threat. The defendant did not suggest in that e-mail that Nowacki should have known that the language of the first e-mail was merely hyperbolic bluster resulting from late night fatigue or a passing moment of intense despondency or frustration. Cf. State v. Krijger , supra, 313 Conn. at 458, 97 A.3d 946 (defendant's apology moments after making threatening comments showed that threat was not serious). To the contrary, the defendant confirmed the validity of Nowacki's initial interpretation of the e-mail by stating, among other things, that, "[i]f they feel it's disturbing that I will fiercely protect my family with all my life ... they would be correct, I will gladly accept my death and theirs protecting my civil rights under my uniform code of justice." Accordingly, we conclude that the trial court properly found that the evidence was sufficient to support a finding beyond a reasonable doubt that "the defendant was himself aware that his e-mail would be seen as threatening ...."
2
We next address the defendant's claim that the evidence was insufficient to establish that he was aware that there was a substantial and unjustifiable risk that Judge Bozzuto would be terrorized by the e-mail **195 because he did not send it to her. The defendant contends that, when he sent the e-mail regarding Judge Bozzuto, he could not have foreseen that it would be communicated to her because he sent it "to friends and fellow travelers."
To the extent that the defendant contends that threatening speech that is not communicated directly to the target of the speech cannot, as a matter of law, constitute a punishable true threat, we disagree.
*31 Numerous courts have held to the contrary.[27] Although the reasoning **196 of *32 these cases is somewhat ad hoc, in light of the purpose of the true threats doctrine, which is not to punish threatening speech in a vacuum, but to protect targets of threats from the fear of violence; see Virginia v. Black , supra, 538 U.S. at 360, 123 S.Ct. 1536 ("a prohibition on true threats protect[s] individuals from the fear of violence and from the disruption that fear engenders" [internal quotation marks omitted] ); Roberts v. State , supra, 78 Ark. App. at 108, 78 S.W.3d 743 (essence of threat is "communication, not utterance"); we conclude that threatening speech that is not communicated directly to the target may **197 nevertheless be punished if the state establishes that the defendant's intent that the threat would be communicated to the target meets the same standard that the state must satisfy in order to punish speech that is directed specifically to the target. As we explained in part I A of this opinion, the statutory recklessness standard is constitutional. We conclude, therefore, that a defendant may be punished for threatening speech directed at a third party if the state proves beyond a reasonable doubt that the defendant was aware that there was a substantial and unjustifiable risk both that his speech would be interpreted as a serious threat and that the threat would be communicated to the target of the threat. Cf. People v. Felix , 92 Cal. App. 4th 905, 913, 112 Cal.Rptr.2d 311 (2001) ("Where the threat is conveyed through a third party intermediary, the specific intent element of the statute is implicated. Thus, if the threatener intended the threat to be taken seriously by the victim, he must necessarily have intended it to be conveyed." [Internal quotation marks omitted.] ), review denied, California Supreme Court, Docket No. S101923 (December 19, 2001).
In the present case, we agree with the trial court that, even if the recipients of the e-mail were " 'like-minded individuals' who understood and shared [the defendant's] frustration with the family court system" and his desire to reform it, the language of the e-mail was so extreme that the defendant had to have been "aware of and consciously disregarded the substantial and unjustifiable risk that ... it would be disclosed to others and cause terror to Judge Bozzuto." Indeed, there was no credible evidence that would support, much less compel, a finding that the defendant believed that all of the recipients would either support or be indifferent to a serious threat to kill a family court judge. To the contrary, the reactions of Nowacki and Verraneault to the defendant's first e-mail support the inference that **198 it was not typical of the communications that previously had been shared by the group and, therefore, that the defendant would have had no reason to believe the recipients would share his desire to inflict violence against Judge Bozzuto.[28]
Moreover, when Skipp was asked if all of the recipients of the e-mail were "of a like mind when the issue was family court in Connecticut," she agreed that they were with the exception of Verraneault, who had "no children that were endangered by the state's actions." We conclude that this evidence *33 was sufficient to establish beyond a reasonable doubt that the defendant was aware that there was a substantial and unjustifiable risk that at least Verraneault would react to the e-mail in the same manner that any reasonable person would react to a serious death threat against another person, and take steps to notify Judge Bozzuto. Accordingly, we conclude that the evidence was sufficient to establish beyond a reasonable doubt that the defendant committed the crime of threatening in the first degree in violation of § 53a-61aa (a) (3).
B
Finally, we address the defendant's contention that the evidence was insufficient to establish that he engaged in disorderly conduct directed at Verraneault. To prove this charge, the state was required to establish **199 that the defendant, by engaging in offensive or disorderly conduct, recklessly created a risk of causing inconvenience, annoyance or alarm to Verraneault. See General Statutes § 53a-182 (a). The defendant contends that although Verraneault "undoubtedly experienced 'inconvenience, annoyance or alarm' upon receipt of the e-mail," because the e-mail was not a true threat, Verraneault's "tender sensibilities should be of no moment to this court."
We have concluded, however, that the defendant's e-mail was indeed a true threat. We further conclude that, when a speaker communicates a true threat to a person other than the target of the threat, and there is no evidence that the speaker believed that the third party would share or be indifferent to the speaker's desire to inflict violence on the target, the communication constitutes offensive conduct and creates a substantial and unjustifiable risk that the person will be inconvenienced, annoyed and alarmed. The defendant placed Verraneault in a position requiring her to either keep quiet about the threat, thereby making herself partially responsible-at least morally, if not legally-in the event it was carried out, or to instead communicate the threat to Judge Bozzuto, thereby taking the risk that the defendant's homicidal anger would be directed at her. Indeed, the trial court expressly found that Verraneault "harbored [fears] about her own safety if [the defendant] were to learn that she was the person who had disclosed the e-mail to law enforcement authorities ...." Accordingly, we conclude that the evidence was sufficient to support the defendant's conviction of disorderly conduct directed at Verraneault.
The judgment is affirmed.
In this opinion the other justices concurred.

The first amendment to the United States constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

Article first, § 4, of the Connecticut constitution provides: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."
Article first, § 5, of the Connecticut constitution provides: "No law shall ever be passed to curtail or restrain the liberty of speech or of the press."
Article first, § 14, of the Connecticut constitution provides: "The citizens have a right, in a peaceable manner, to assemble for their common good, and to apply to those invested with the powers of government, for redress of grievances, or other proper purposes, by petition, address or remonstrance."

General Statutes § 53a-61aa (a) provides in relevant part: "A person is guilty of threatening in the first degree when such person ... (3) commits threatening in the second degree as provided in section 53a-62, and in the commission of such offense such person uses or is armed with and threatens the use of or displays or represents by such person's words or conduct that such person possesses a pistol, revolver, shotgun, rifle, machine gun or other firearm ...." We note that the legislature has amended § 53a-61aa since the events underlying the present appeal. See, e.g., Public Acts 2016, No. 16-67, § 6. Those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.
General Statutes (Rev. to 2013) § 53a-62 (a), in turn, provides: "A person is guilty of threatening in the second degree when ... (3) such person threatens to commit [any] crime of violence in reckless disregard of the risk of causing ... terror ...." We note that the legislature has also made certain amendments to § 53a-62 that are not relevant to the present appeal. See, e.g., Public Acts 2016, No. 16-67, § 7 (changing internal designations). For the sake of consistency with the record in the present case, all references to § 53a-62 in this opinion are to the 2013 revision of the statute.

The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

General Statutes § 53a-182 (a) provides: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person ... (2) by offensive or disorderly conduct, annoys or interferes with another person ...."

To the extent that the defendant contends that none of the statutes under which he was convicted is constitutional as applied to threatening speech, he effectively concedes on appeal that, if this court concludes that his conduct in sending the e-mail constitutionally may be subject to punishment pursuant to § 53a-61aa (a) (3), the other criminal statutes under which he was charged are also constitutional as applied to him. Accordingly, we limit our analysis to the constitutionality of § 53a-61aa (a) (3).

This e-mail reads as follows: "Facts: JUST an FYI ....
"[1] [I'm] still married to that POS ... we own our children, there is no decision ... its 50/50 or whatever we decide. The court is dog shit and has no right to shit they don't have a rule on.
"[2] They can steal my kids from my cold dead bleeding cordite filled fists ... as my [sixty] round [magazine] falls to the floor and [I'm] dying as I change out to the next [thirty rounds] ....
"[3] [Bo]zzuto lives in [W]atertown with her boys and [n]anny ... there [are] 245 [yards] between her master bedroom and a cemetery that provides cover and concealment.
"[4] They could try and put me in jail but that would start the ringing of a bell that can be undone ....
"[5] Someone wants to take my kids better have an [F-35 fighter jet] and smart bombs ... otherwise they will be found and adjusted ... they should seek shelter on the ISS ( [international] space station) ....
"[6] BTW a [.308 caliber rifle] at 250 [yards] with a double pane drops [one-half inch] per foot beyond the glass and loses [7 percent] of [foot pounds] of force [at] 250 [yards]-nonarmor piercing ball ammunition ....
"[7] Mike may be right ... unless you sleep with level [three] body armor or live on the ISS you should be careful of actions.
"[8] Fathers do not cause cavities, this is complete bullshit.
"[9] Photos of children are not illegal ....
"[10] Fucking [n]annies is not against the law, especially when there is no fucking going on, just ask [Bo]zzuto ... she is the ultimate [n]anny fucker."

The defendant's second e-mail reads as follows: "Hi Mike ... the thoughts that the courts want to take my civil rights away is equally disturbing, I did not have children, to have them abused by an illegal court system.
"My civil rights and those of my children and family will always be protected by my breath and hands.
"I know where she lives and I know what I need to bring about change ....
"These evil court assholes and self appointed devils will only bring about an escalation that will impact their personal lives and families.
"When they figure out they are not protected from bad things and their families are taken from them in the same way they took yours then the system will change.
"This past week in [Ferguson] there was a lot of hurt caused by an illegal act, if it were my son, shot, there would be an old testament response.
"[Second] amendment rights are around to keep a police state from violating my [family's] rights.
"If they-courts ... need sheeple they will have to look elsewhere. If they feel it's disturbing that I will fiercely protect my family with all my life ... they would be correct, I will gladly accept my death and theirs protecting my civil rights under my uniform code of justice.
"They do not want me to escalate ... and they know I will gladly ....
"I've seen years of fighting go [unnoticed], people are still suffering .... Judges still fucking sheeple over. Time to change the game.
"I don't make threats, I present facts and arguments. The argument today is what has all the energy that has expended done to really effect change, the bottom line is-insanity is defined as doing the [same thing] over and over and expecting a different outcome ... we should all be done ... and change the game to get results ... that's what Thomas Jefferson wrote about constantly.
"Don't be disturbed ... be happy there are new minds taking up a fight to change a system.
"Here is my daily prayer:
"I will never quit. I persevere and thrive on adversity.
"My [n]ation and [f]amily expects me to be physically harder and mentally stronger than my enemies.
"If knocked down, I will get back up, every time.
"I will draw on every remaining ounce of strength to protect my [family and] teammates and to accomplish our mission.
"I am never out of the fight ...." (Internal quotation marks omitted.)

All of the charges against the defendant arose from his conduct in sending the first e-mail, which, according to the trial court's factual findings, was the only e-mail that had been provided to law enforcement before the defendant's arrest and the only e-mail that came to the attention of Judge Bozzuto.

All subsequent references to the trial court are to Judge Gold.

General Statutes § 53a-3 (13) provides: "A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation ...."

In his brief, the defendant contends that the trial court improperly applied Krijger 's objective foreseeability standard and that the court "altogether neglect[ed] the issue of scienter." The trial court did not neglect the issue of scienter, however, but applied the statutory recklessness standard, which it previously had concluded was constitutional. Nevertheless, because the defendant contends that the state and federal constitutions require the state to prove that he had the specific intent to terrorize Judge Bozzuto, that contention necessarily includes the position that the statutory recklessness standard is also unconstitutional.

We note that the defendant did not preserve before the trial court his state constitutional claim or his claim suggesting that proof of specific intent is required when the threatening speech is directed at a public official. Accordingly, we review those claims pursuant to State v. Golding , 213 Conn. 233, 239-40, 567 A.2d 823 (1989), under which "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation ... exists and ... deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; internal quotation marks omitted.) State v. Holley , 327 Conn. 576, 590 n.8, 175 A.3d 514 (2018) ; see also In re Yasiel R. , 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying Golding 's third prong).

We recently stated in State v. Kono , 324 Conn. 80, 123, 152 A.3d 1 (2016), that, "if the federal constitution does not clearly and definitively resolve the issue in the defendant's favor, we turn first to the state constitution to ascertain whether its provisions entitle the defendant to relief." In Kono , however, the defendant prevailed on his claim under the state constitution. Id., at 122, 152 A.3d 1. In the present case, we conclude that the defendant cannot prevail on his state constitutional claim. See part I B of this opinion. It is necessary, therefore, to consider his federal constitutional claim. Moreover, because a review of federal precedent is part of our state constitutional analysis under State v. Geisler , 222 Conn. 672, 685, 610 A.2d 1225 (1992), we address the defendant's claim under the federal constitution first for the sake of efficiency.

Chief Justice Rehnquist and Justices Stevens and Breyer agreed with the portion of Justice O'Connor's opinion holding that the prima facie evidence provision was unconstitutional. The plurality noted, however, that the Supreme Court of Virginia had not authoritatively interpreted the meaning of the prima facie evidence provision, and it was theoretically possible that "the court, on remand, could interpret the provision in a manner different from that so far set forth in order to avoid the constitutional objections we have described." Virginia v. Black , supra, 538 U.S. at 367, 123 S.Ct. 1536. Justice Scalia, who had provided the fifth vote in the majority, contended in his concurring and dissenting opinion, which Justice Thomas joined, that the prima facie evidence provision was constitutional because it allowed defendants to rebut the presumption of the intent to intimidate. See id., at 370-71, 123 S.Ct. 1536. Justice Souter contended in his concurring and dissenting opinion, in which Justices Kennedy and Ginsburg joined, that the entire cross burning statute was unconstitutional. See id., at 387, 123 S.Ct. 1536. Justice Thomas contended in a concurring and dissenting opinion that the prima facie evidence provision was constitutional. See id., at 388, 123 S.Ct. 1536.

See United States v. Heineman , 767 F.3d 970, 980 (10th Cir. 2014) ("one of the predicates for the plurality's overbreadth ruling [in Black ] was the [c]ourt's view that a threat was unprotected by the [f]irst [a]mendment only if the speaker intended to instill fear in the recipient"); id., at 981 (if subjective intent is required to convict defendant of intimidation, it must be required for other types of true threats as well); United States v. Bagdasarian , 652 F.3d 1113, 1117-18 (9th Cir. 2011) (holding without analysis that Black adopted specific intent requirement); Brewington v. State , 7 N.E.3d 946, 964 (Ind. 2014) (stating in dictum that Black held that first amendment requires subjective intent to intimidate), cert. denied, --- U.S. ----, 135 S. Ct. 970, 190 L.Ed.2d 834 (2015) ; see also United States v. Parr , 545 F.3d 491, 500 (7th Cir. 2008) (declining to decide whether Black adopted subjective intent standard, but stating in dictum that "[i]t is more likely ... an entirely objective definition is no longer tenable"), cert. denied, 556 U.S. 1181, 129 S.Ct. 1984, 173 L.Ed.2d 1083 (2009).

See United States v. Martinez , 736 F.3d 981, 988 (11th Cir. 2013), vacated on other grounds, --- U.S. ----, 135 S.Ct. 2798, 192 L.Ed.2d 842 (2015) ; United States v. Elonis , 730 F.3d 321, 329-30 (3d Cir. 2013), rev'd on other grounds, --- U.S. ----, 135 S.Ct. 2001, 192 L.Ed.2d 1 (2015) ; United States v. Jeffries , 692 F.3d 473, 479-80 (6th Cir. 2012), cert. denied, 571 U.S. 817, 134 S.Ct. 59, 187 L.Ed.2d 25 (2013) ; United States v. White , 670 F.3d 498, 508-509 (4th Cir. 2012) ; United States v. Mabie , 663 F.3d 322, 332 (8th Cir. 2011) ; People v. Stanley , 170 P.3d 782, 788 (Colo. App. 2007), cert. denied, Colorado Supreme Court, Docket No. 07SC575, 2007 WL 4099205 (November 19, 2007), cert. denied, 552 U.S. 1297, 128 S.Ct. 1750, 170 L.Ed.2d 541 (2008) ; People v. Diomedes , 382 Ill.Dec. 712, 13 N.E.3d 125, 137 (Ill. App. 2014), appeal denied, 396 Ill.Dec. 180, 39 N.E.3d 1006 (2015) ; State v. Draskovich , 904 N.W.2d 759, 762 (S.D. 2017) ; State v. Schaler , 169 Wash.2d 274, 283, 236 P.3d 858 (2010) ; see also Elonis v. United States , supra, 135 S.Ct. at 2016, 192 L.Ed.2d 1 (Alito, J., concurring in part and dissenting in part) (statute requiring proof of recklessness in making threat was constitutional under first amendment); Elonis v. United States , supra, at 2027, 192 L.Ed.2d 1 (Thomas, J., dissenting) ("[t]he [c]ourt's fractured opinion in Black ... says little about whether an intent-to-threaten requirement is constitutionally mandated"); United States v. Turner , 720 F.3d 411, 420 and n.4 (2d Cir. 2013) (applying objective test and noting that defendant did not rely on split caused by Black , but concluding that result would be same under either objective or subjective test), cert. denied, --- U.S. ----, 135 S.Ct. 49, 190 L.Ed.2d 29 (2014).

Although the defendant relies on the federal precedent Geisler factor, we concluded in part I A of this opinion that persuasive federal precedent does not require proof of subjective intent. Accordingly, that factor favors the state's position that the recklessness standard of § 53a-61aa (a) (3) comports with the state constitution.

See Watts v. United States , 394 U.S. 705, 707, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (statute criminalizing threats against president was constitutional because "[t]he [n]ation undoubtedly has a valid, even an overwhelming, interest in protecting the safety of its [c]hief [e]xecutive and allowing him to perform his duties without interference from threats of physical violence"); United States v. Bazuaye , 559 Fed. Appx. 709, 714 (10th Cir. 2014) (when defendant made true threat against police officer, threat was not constitutionally protected speech); United States v. Turner , 720 F.3d 411, 423-24 (2d Cir. 2013) (statute criminalizing threats against judges was constitutional because first amendment does not protect true threats), cert. denied, --- U.S. ----, 135 S.Ct. 49, 190 L.Ed.2d 29 (2014) ; United States v. Beale , 620 F.3d 856, 865-66 (8th Cir. 2010) (statute criminalizing threats against judicial officers of United States was constitutional because first amendment does not protect true threats), cert. denied, 562 U.S. 1190, 131 S.Ct. 1023, 178 L.Ed.2d 847 (2011) ; United States v. Wolff , 370 Fed. Appx. 888, 893 (10th Cir. 2010) ("[t]he fact that a specific threat accompanies pure political speech does not shield a defendant from culpability" [internal quotation marks omitted] ); United States v. Fulmer , 108 F.3d 1486, 1493 (1st Cir. 1997) (when defendant was charged with threatening federal agent, "a conviction ... based on a finding that the statement was a true threat would not violate [the defendant's] constitutionally protected right to [political] speech"); People v. Nishi , 207 Cal. App. 4th 954, 965, 143 Cal.Rptr.3d 882 (2012) (statute criminalizing threats against executive officers of state was constitutional because first amendment does not protect true threats), review denied, California Supreme Court, Docket No. 07SC575 (October 17, 2012); State v. Draskovich , 904 N.W.2d 759, 764 (S.D. 2017) (upholding conviction of charge of threatening courthouse employees and judge because speech constituted true threat); Ex parte Eribarne , 525 S.W.3d 784, 785 (Tex. App. 2017) (statute criminalizing threats directed at public servants was constitutional because "the statute punishes conduct rather than the content of speech alone and bears a rational relationship to the [s]tate's legitimate and compelling interest in protecting public servants from harm"), review refused, Texas Court of Criminal Appeals, Docket No. PD-0901-17 (October 25, 2017).

Judge Bozzuto testified that, when she received the copy of the defendant's e-mail, she was aware that the family court previously had issued an order requiring the defendant to surrender all of his weapons. She also testified that, when she read the e-mail, she "took it that he had a weapon." There is no evidence, however, that Judge Bozzuto had any reason other than the reference in the e-mail to a .308 caliber rifle to believe that the defendant possessed weapons in violation of the family court order.

See part I A of this opinion.

This point may also have been missed by the Appellate Court in State v. Krijger , 130 Conn. App. 470, 24 A.3d 42 (2011), rev'd, 313 Conn. 434, 97 A.3d 946 (2014). In that case, the defendant was convicted of threatening in the second degree in violation of § 53a-62 (a) (3), and breach of the peace in violation of § 53a-181 (a) (3). Id., at 472, 24 A.3d 42. The defendant claimed on appeal to the Appellate Court that the convictions must be reversed because his speech was constitutionally protected under the true threats doctrine. Id., at 476, 24 A.3d 42. Like the defendant in the present case, the defendant in Krijger did not directly raise a statutory sufficiency claim, and the Appellate Court affirmed the convictions upon concluding that the evidence was sufficient to establish the constitutional objective foreseeability standard, without considering whether the evidence was sufficient to satisfy the higher statutory recklessness standard. Id., at 484, 24 A.3d 42. On appeal to this court, we concluded that the state had not met the constitutional standard and reversed the judgment of the Appellate Court. See State v. Krijger , supra, 313 Conn. at 460, 97 A.3d 946. Accordingly, we had no occasion to consider whether the higher statutory standard had been met.

We acknowledge that, in Elonis v. United States , supra, 135 S.Ct. at 2011, the Supreme Court rejected the government's argument that it could be inferred from proof that a reasonable person would interpret the defendant's threatening speech as a serious threat that the defendant was aware that the speech was threatening. Elonis , however, did not involve a sufficiency of the evidence claim. Rather, it involved a claim that the jury had not been instructed that it must find that the defendant was aware that his speech would be interpreted as a serious threat. See id., at 2012 ("[t]he jury was instructed that the [g]overnment need prove only that a reasonable person would regard [the defendant's] communications as threats"). Accordingly, we do not believe that Elonis supports the proposition that recklessness cannot be inferred from proof that the defendant engaged in speech that a reasonable person would interpret as a serious threat even when the fact finder applied the proper mens rea standard. Indeed, "[w]e have long recognized that a defendant's state of mind can usually be proven only by circumstantial evidence." State v. Salz , supra, 226 Conn. at 32, 627 A.2d 862. We recognize, however, that there might be rare cases in which a defendant could undercut such an inference by showing that he simply was not aware of the objectively reasonable meaning of his speech. For example in Elonis v. United States , supra, at 2011, the government suggested the inference might be undercut by showing that the threatening speech was uttered by "a foreigner, ignorant of the English language, who would not know the meaning of the words at issue, or an individual mailing a sealed envelope without knowing its contents." (Internal quotation marks omitted.)

Whether the defendant actually intended to harm Judge Bozzuto or, instead, the statements in his e-mail were, as he claims, merely hyperbolic bluster, has no bearing on our analysis. The question before us is whether the defendant knew that there was a substantial and unjustifiable risk that the recipients of the e-mail would interpret it as a serious threat.

The defendant contends that the fact the Verraneault did not immediately communicate the contents of the e-mail to Judge Bozzuto or to others who could warn her shows that a reasonable person would not interpret the e-mail as a serious threat of harm. The trial court found, however, that the fact that Verraneault took the threat seriously was established by evidence showing that she sought guidance from a number of people as to how to proceed immediately after reading the e-mail. The trial court also found that Verraneault's delay in warning Judge Bozzuto was explained in part by the fact that "she harbored genuine concerns as to how the defendant would react if he was to learn that she was the person who had reported the e-mail to authorities." It would, indeed, be ironic to conclude that a delay in reporting caused by a genuine fear of the person who made the threat could be used to infer that the recipient did not interpret the threat to be serious.

The state presented evidence, on which the trial court relied, that, after Judge Bozzuto admonished the defendant in court on June 18, 2014, the defendant sent out multiple e-mails and Facebook postings criticizing Judge Bozzuto. There is no direct evidence, however, that either the recipients of the defendant's e-mail or Judge Bozzuto were aware of these specific communications. Nevertheless, the trial court reasonably could have concluded that the members of the informal family court reform group, which included the recipients of the e-mail, were generally aware of the defendant's negative attitude toward the family court and its personnel.

See United States v. Turner , supra, 720 F.3d at 425 (rejecting defendant's claim that blog posts on public website in which defendant repeatedly stated that three judges deserved to be killed for issuing decision affecting gun rights was not true threat because he did not threaten to kill judges on ground that threats "need be neither explicit nor conveyed with the grammatical precision of an Oxford don"); United States v. Jeffries , supra, 692 F.3d at 483 (defendant who posted YouTube video of himself performing song containing numerous threatening statements directed at judge assigned to defendant's child custody case was properly convicted under threatening statute because statute contained no requirement that threat be communicated to its target); United States v. Bagdasarian , 652 F.3d 1113, 1121-22 (9th Cir. 2011) (concluding that evidence that defendant had posted comments on public internet message board suggesting that presidential candidate Barack Obama should be shot was insufficient to establish that comments would be understood as serious threat because only one of many persons who read posts understood them as sufficiently disturbing to notify authorities and because defendant did not indicate that he personally intended to shoot Obama); United States v. Parr , 545 F.3d 491, 497-98 (7th Cir. 2008) ("[a] threat doesn't need to be communicated directly to its victim"), cert. denied, 556 U.S. 1181, 129 S.Ct. 1984, 173 L.Ed.2d 1083 (2009) ; Doe v. Pulaski County Special School District , supra, 306 F.3d at 624 (threatening speech can be punished as true threat if speaker intended to communicate threat to third party); United States v. Snelenberger , 24 F.3d 799, 803 (6th Cir.) (under statute making it crime to threaten judge with intent to retaliate, government was not required to prove that defendant intended that threat would be communicated to judge, overruled in part on other grounds by United States v. Hayes , 227 F.3d 578 [6th Cir. 2000] ), cert. denied, 513 U.S. 967, 115 S.Ct. 433, 130 L.Ed.2d 346 (1994) ; Roberts v. State , supra, 78 Ark. App. at 108, 78 S.W.3d 743 (although threatening statute did "not require that the threat be communicated directly to the person threatened," proof of intent to communicate is required because "the gravamen of the offense is communication, not utterance"); People v. Nishi , 207 Cal. App. 4th 954, 967, 143 Cal.Rptr.3d 882 (2012) (threat communicated to third parties was punishable under threatening statute because "defendant intended, and expected or at least foresaw, [that the threat] would be conveyed from [the third parties] to the intended law enforcement targets of the threat"), review denied, California Supreme Court, Docket No. 07SC575 (October 17, 2012); People v. Felix , 92 Cal. App. 4th 905, 913, 112 Cal.Rptr.2d 311 (2001) ("Where the threat is conveyed through a third party intermediary, the specific intent element of the statute is implicated. Thus, if the threatener intended the threat to be taken seriously by the victim, he must necessarily have intended it to be conveyed." [Internal quotation marks omitted.] ), review denied, California Supreme Court, Docket No. S101923 (December 19, 2001); State v. Chung , 75 Haw. 398, 417, 862 P.2d 1063 (1993) (statements made to third parties constituted true threat when they "were sufficiently alarming to impel [the third parties] to transmit them to [the target of the threat] and for the police to be notified"); People v. Diomedes , 382 Ill.Dec. 712, 13 N.E.3d 125, 139 (Ill. App. 2014) (threat communicated to third party was true threat because "a reasonable sender would foresee that a reasonable recipient would view it as a serious threat to harm another"), appeal denied, 396 Ill.Dec. 180, 39 N.E.3d 1006 (2015) ; Commonwealth v. Beasley , 138 A.3d 39, 47 (Pa. Super.) (threat posted on Facebook page was true threat because defendant "wanted" target of threat to receive it and "successfully and intentionally communicated his threat" to target), appeal denied, 639 Pa. 579, 161 A.3d 791 (2016) ; Wilkins v. State , 279 S.W.3d 701, 705 (Tex. App. 2007) (under statute making it crime to intentionally or knowingly threaten another, when defendant made threatening comment on telephone that was overheard by others who then reported threat to its target, evidence was insufficient to support conviction because "nothing in the record can be construed as evidence that appellant intended or knew with reasonable certainty that his statement would" place target of threat in fear); State v. Johnson , 178 P.3d 915, 919-20 (Utah App. 2008) (holding as matter of statutory interpretation that statute that criminalized threats to kill judge with intent to intimidate or retaliate did not require state to prove that defendant knew that threat would be communicated to target, but only that person to whom threat was communicated would interpret it as serious threat).

As the trial court recognized, Skipp testified that the group of people interested in reforming the family court system had exchanged communications that were similar in intensity and hyperbole to the statements in the defendant's e-mail. The only examples that she could provide, however, were her own statements that "I wish I could mail [the guardian ad litem in her family court case] a box of dog poop" and "I wish [the guardian ad litem] would [self-immolate] ...." Kelley characterized the defendant's e-mail as a "hyperbolic [rant]." The trial court concluded, however, that there were serious questions as to whether Skipp and Kelley "were objective and unbiased witnesses [that] significantly undermined the value and credibility of their testimony" on this issue.